# EXHIBIT 3

Montgomery County Council

**Committee:** PS
**Committee Review:** Completed
**Staff:** Christine Wellons, Legislative Attorney
**Purpose:** Final action – vote expected
**Keywords:** #NoGhostGunsMoCo, #SafetyMattersInMoCo

AGENDA ITEM #18A
April 6, 2021
**Action**

## SUBJECT

Bill 4-21, Weapons – Protection of Minors and Public Places - Restrictions Against Ghost Guns and Undetectable Guns
Lead Sponsor: Council Vice President Albornoz
Co-Sponsors: Council President Hucker, Councilmembers Katz, Jawando, Navarro, Friedson, Rice, Riemer and Glass

## EXPECTED ATTENDEES

Marcus C. Jones, Chief, Montgomery County Police Department

## COUNCIL DECISION POINTS & COMMITTEE RECOMMENDATION

- Council Action; Vote Required
- The Public Safety Committee recommends enactment of Bill 4-21 with amendments.

## DESCRIPTION/ISSUE

Bill 4-21, Weapons – Protection of Minors and Public Places - Restrictions Against Ghost Guns and Undetectable Guns, would:

- define terms related to firearm laws;
- restrict the manufacture, possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms with respect to minors;
- restrict the manufacture, possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms within 100 yards of places of public assembly; and
- generally amend the law regarding firearms and other weapons.

## SUMMARY OF KEY DISCUSSION POINTS

- The Public Safety Committee recommends enactment of Bill 4-21 with amendments to:
  - consistent with the scope of state preemption, delete from the bill references to gun manufacturing.

**<u>This report contains:</u>**


| | |
|---|---|
| Staff Report | Pages 1 |
| Bill 4-21 | ©1 |
| Legislative Request Report | ©8 |
| RESJ Statement | ©9 |
| Economic Impact Statement | ©13 |

Fiscal Impact Statement ©16
Testimony ©18

**Alternative format requests for people with disabilities. If you need assistance accessing this report you may** submit alternative format requests to the ADA Compliance Manager. The ADA Compliance Manager can also be reached at 240-777-6197 (TTY 240-777-6196) or at adacompliance@montgomerycountymd.gov

Agenda Item 18A
April 6, 2021
**Action**

# M E M O R A N D U M

April 1, 2021

TO: County Council

FROM: Christine Wellons, Legislative Attorney

SUBJECT: Bill 4-21, Weapons – Protection of Minors and Public Places - Restrictions Against Ghost Guns and Undetectable Guns

PURPOSE: Action – Council vote required

Bill 4-21, Weapons – Protection of Minors and Public Places - Restrictions Against Ghost Guns and Undetectable Guns, sponsored by Lead Sponsor Council Vice President Albornoz and Co-Sponsors, Council President Hucker and Councilmembers Katz, Jawando, Navarro, Friedson, Rice, Riemer and Glass, was introduced on January 19, 2021.[1] A public hearing was held on February 9, 2021 and a Public Safety Committee worksession was held on March 11.

Bill 4-21 would:

- define terms related to firearm laws;
- restrict the manufacture, possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms with respect to minors;
- restrict the manufacture, possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms within 100 yards of places of public assembly; and
- generally amend the law regarding firearms and other weapons.

## BACKGROUND

"Ghost guns," or "do-it-yourself guns," are unserialized firearms built by unlicensed individuals. These guns evade many firearms regulations. Kits to build ghost guns are readily sold on the internet, without the requirement of federal background checks. Other ghost guns are built at home using blueprints and 3D printers.

When ghost guns are used in crimes, they are untraceable due to lack of serial numbers. During 2020, Montgomery County Police Department (MCPD) officers recovered 73 ghost guns.

Several states, including New Jersey, Rhode Island, and Washington State, as well as the District of Columbia, have passed laws to regulate ghost guns. The Maryland General Assembly

---

[1]#NoGhostGunsMoCo, #SafetyMattersInMoCo

has introduced, but not yet passed, legislation to regulated unfinished frames and receivers. At the federal level, Congressional bills to regulate ghost guns have not yet been successful.

## SPECIFICS OF THE BILL

The purpose of Bill 4-21 is to begin to address the issue of ghost guns at the County level, consistent with limitations placed upon localities by Maryland state preemption of local firearms regulations. Under Maryland law, the County generally is preempted to regulate in the area of firearms. However, state law carves out certain specific areas in which the County may regulate. In particular, the County may regulate the sale, use, or transfer of firearms: (1) with respect to minors; or (2) within 100 yards of a place of public assembly.

In this vein, the bill first would maximize the impact of the County's firearms regulations by expanding the definition of "place of public assembly". The definition of "place of public assembly would be expanded to include any "place where the public may assemble, whether the place is publicly or privately owned, including a [government owned] park [identified by the Maryland-National Capital Park and Planning Commission]; place of worship; [elementary or secondary] school; [public] library; [government-owned or -operated] recreational facility; or multipurpose exhibition facility, such as a fairgrounds or conference center."

With respect to ghost guns or DIY guns, the bill would define ghost guns to include firearms, including unfinished frames or receivers, that are unserialized in accordance with federal regulations. The bill would define undetectable guns to include those that cannot be detected through metal detectors, or that are made with 3D printers. These ghost guns, including unfinished frames or receivers, and undetectable guns would be restricted with regard to minors and places of public assembly.

Specifically, the bill would prohibit a person from transferring a ghost gun or undetectable gun to a minor. Further, it would prohibit a person from possessing or manufacturing a gun, including through a 3D printing process, in the presence of a minor. Persons also would be prohibited from storing ghost guns, undetectable guns, or gun components in places that the person should know are accessible to minors.

Concerning places of public assembly, the bill would prohibit the sale, transfer, manufacture, or possession of ghost guns or undetectable guns within 100 yards of a place of public assembly. The bill also would prohibit – within 100 yards of a place of public assembly – the sale, transfer, possession, or use of a computer code to create a firearm through a 3D printing process.

## SUMMARY OF PUBLIC HEARING

At the public hearing on February 9, five speakers provided testimony regarding Bill 4-21. Chief Marcus Jones testified that the Montgomery County Police Department (MCPD) and the County Executive "fully support the bill." Chief Jones stated that ghost guns are easy to acquire through 3D printing. Ghost guns also are easy to build from parts that can be bought on the internet. Ghost guns make the investigation of crime more difficult and tracing the origins of the ghost guns is nearly impossible. In 2020, MCPD recovered 73 ghost guns.

Brady United, Marylanders to Prevent Gun Violence, and Critical Issues Forum of Montgomery County also testified in support of the bill.

One individual spoke in opposition to the bill. He explained that he has built ghost guns for personal recreation and sports and he should not be prevented from doing so. He also pointed out that ghost guns are the subject of pending state legislation.

## SUMMARY OF PUBLIC SAFETY COMMITTEE WORKSESSION

The Public Safety Committee voted (3-0) to recommend the enactment of Bill 4-21 with amendments.

### 1. Amendment Related to State Preemption

The Committee adopted (3-0) several amendments, described below, to make the bill consistent with the scope of state preemption.

Under the Criminal Law Article of the Maryland Code, § 4-209:

**State preemption**

(a) Except as otherwise provided in this section, the State preempts the right of a county, municipal corporation, or special taxing district to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation of:

(1) a handgun, rifle, or shotgun; and

(2) ammunition for and components of a handgun, rifle, or shotgun.

**Exceptions**

(b)(1) A county, municipal corporation, or special taxing district ***may regulate the purchase, sale, transfer, ownership, possession, and transportation*** of the items listed in subsection (a) of this section:

(i) with respect to minors;

(ii) with respect to law enforcement officials of the subdivision; and

(iii) except as provided in paragraph (2) of this subsection, within 100 yards of or in a park, church, school, public building, and other place of public assembly.

(2) A county, municipal corporation, or special taxing district may not prohibit the teaching of or training in firearms safety, or other educational or sporting use of the items listed in subsection (a) of this section.

(Emphasis added).

As originally drafted, the bill would regulate the manufacture, possession, use, sale, and transfer of ghost guns or undetectable guns with respect to minors, and with respect to 100 yards from a place of public assembly. While the preemption provisions of the Criminal Law article allow for local regulation of the possession, use, sale, and transfer of these guns, they do not allow for the regulation of the *manufacture* of guns. To make the bill consistent with state preemption provisions, the PS Committee has recommended the following amendments.

*Delete lines 103-104:*

(d) A person must not **[[**manufacture or assemble**]]** purchase, sell, transfer, possess, or transfer a ghost gun, including **[[**making**]]** a gun created through a 3D printing process, in the presence of a minor.

*Amend lines 111-118 as follows.*

(a) **[**A**]** In or within 100 yards of a place of public assembly, a person must not:

(1) sell, transfer, **[[**manufacture, assemble,**]]** possess, or transport a ghost gun, undetectable gun, handgun, rifle, or shotgun, or ammunition or major component for these firearms**[**, in or within 100 yards of a place of public assembly**]**; or

(2) sell, transfer, possess, or transport**[[**, or use a computer code to create,**]]** a firearm created through a 3D printing process.

## 2. Pending State Legislation

The PS Committee discussed that in the Maryland General Assembly, Delegate Lopez and Senator Lee have sponsored legislation (Legislation - HB0638 (maryland.gov) that would generally require an unfinished frame or receiver to be marked by a federally licensed firearms manufacturer or federally licensed firearms importer before being: (1) sold, offered for sale, or transferred in the State; (2) imported or otherwise brought into the State; or (3) possessed in the State.

In addition, the state bill would prohibit a dealer or any other person from selling, renting, or transferring an unfinished frame or receiver to a purchaser, lessee, or transferee unless the purchaser, lessee, or transferee presents to the dealer or other person a handgun qualification license (HQL) issued to the purchaser, lessee, or transferee by the Secretary of State Police.

## 3. Survey of Ghost Gun Legislation in Other Jurisdictions

The PS Committee discussed that many jurisdictions – including the District of Columbia, Virginia, California, Connecticut, Hawaii, New Jersey, New York, Rhode Island, and Washington State – have laws regulating the sale or possession of "ghost guns" (*i.e.*, unserialized firearms, including unfinished frames or receivers) and undetectable guns.

According to the Giffords Law Center to Prevent Gun Violence, these state laws vary in their features and their strength, but many include regulations to:

- require frames and receivers, and guns created through 3D printing, to have serial numbers;
- permit the distribution of unfinished frames or receivers only through licensed dealers;
- require that all operable firearms be detectable by standard screening systems;
- require a background check before transferring an unfinished frame or receiver; and
- require a license to manufacture or assemble a firearm using unfinished materials or a 3D printer.

(*See* Ghost Guns | Giffords).

In terms of nearby jurisdictions, the District of Columbia has generally prohibited the possession, sale, or transfer of unfinished frames or receivers and untraceable firearms. (D.C. B. 681, Act No. 23-245; D.C. B. 746, Act No. 23-324; and D.C. Act 23-125). Virginia has banned the manufacture, importation, sale, transfer or possession of certain "plastic guns" that are undetectable by x-rays, but has not addressed the issue of unfinished frames or receivers. (Va. Code Ann. § 18.2-308.5). In New Jersey, it is a crime to knowingly possess, or to transfer, ship, sell or dispose of, a firearm manufactured or otherwise assembled using a firearm frame or firearm that is not imprinted with a serial number registered with a federally licensed manufacturer. (N.J. Stat. Ann. §§ 2C:39-3(n); 2C:39-9(n)).

**NEXT STEP:** Roll call vote on whether to enact Bill 4-21 with amendments, as recommended by the Public Safety Committee.

| This packet contains: | Circle # |
|---|---|
| Bill 4-21 | 1 |
| Legislative Request Report | 8 |
| RESJ Statement | 9 |
| Economic Impact Statement | 13 |
| Fiscal Impact Statement | 16 |
| Testimony | 18 |

F:\LAW\BILLS\2104 Ghost Guns\Action Memo.Docx

Bill No. 4-21
Concerning: Weapons – Protection of Minors and Public Places - Restrictions Against Ghost Guns and Undetectable Guns
Revised: 1/14/2021 Draft No. 4
Introduced: January 19, 2021
Expires: July 19, 2022
Enacted: ______
Executive: ______
Effective: ______
Sunset Date: None
Ch. ______, Laws of Mont. Co. ______

# COUNTY COUNCIL
# FOR MONTGOMERY COUNTY, MARYLAND

Lead Sponsor: Council Vice-President Albornoz
Co-Sponsors: Council President Hucker, Councilmembers Katz, Jawando, Navarro, Friedson, Rice, Riemer and Glass

**AN ACT** to:
(1) define terms related to firearm laws;
(2) restrict the manufacture, possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms with respect to minors;
(3) restrict the manufacture, possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms within 100 yards of places of public assembly; and
(4) generally amend the law regarding firearms and other weapons.

By amending
Montgomery County Code
Chapter 57, Weapons
Sections 57-1, 57-7, and 57-11

By adding
Montgomery County Code
Chapter 57, Weapons
Section 57-16

| | |
|---|---|
| **Boldface** | *Heading or defined term.* |
| Underlining | *Added to existing law by original bill.* |
| **[**Single boldface brackets**]** | *Deleted from existing law by original bill.* |
| Double underlining | *Added by amendment.* |
| **[[**Double boldface brackets**]]** | *Deleted from existing law or the bill by amendment.* |
| * * * | *Existing law unaffected by bill.* |

*The County Council for Montgomery County, Maryland approves the following Act:*

**Sec. 1. Sections 57-1, 57-7, and 57-11 are amended, and Section 57-16 is added, as follows:**

**57-1. Definitions.**

In this Chapter, the following words and phrases have the following meanings:

*3D printing process*: a process of making a three-dimensional, solid object using a computer code or program, including any process in which material is joined or solidified under computer control to create a three-dimensional object.

* * *

*Gun* or *firearm*: Any rifle, shotgun, revolver, pistol, ghost gun, undetectable gun, air gun, air rifle or any similar mechanism by whatever name known which is designed to expel a projectile through a gun barrel by the action of any explosive, gas, compressed air, spring or elastic.

(1) The term "antique firearm" means (a) any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; and (b) any replica of any firearm described in subparagraph (a) if such replica (i) is not designed or redesigned or using rimfire or conventional centerfire fixed ammunition, or (ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

(2) "Ghost gun" means a firearm, including an unfinished frame or receiver, that lacks a unique serial number engraved or cased in metal alloy on the frame or receiver by a licensed manufacturer, maker or importer under federal law or markings in accordance

with 27 C.F.R. § 479.102. It does not include a firearm that has been rendered permanently inoperable, or a firearm that is not required to have a serial number in accordance with the Federal Gun Control Act of 1968.

(3) "Handgun" means any pistol, revolver or other firearm capable of being concealed on the person, including a short-barreled shotgun and a short-barreled rifle as these terms are defined below. "Handgun" does not include a shotgun, rifle, or antique firearm.

**[**(3)**]** (4) "Rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

**[**(4)**]** (5) The term "short-barreled rifle" means a rifle having one (1) or more barrels less than sixteen (16) inches in length and any weapon made from a rifle (whether by alternation, modification or otherwise) if such weapon, as modified, has an overall length of less than twenty-six (26) inches.

**[**(5)**]** (6) The term "short-barreled shotgun" means a shotgun having one (1) or more barrels less than eighteen (18) inches in length and any weapon made from a shotgun (whether by alteration, modification or otherwise) if such weapon as modified has an overall length of less than twenty-six (26) inches.

**[**(6)**]** (7) "Shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth

bore either a number of ball shot or a single projectile for each single pull of the trigger.

(8) "Undetectable gun" means:

(A) a firearm that, after the removal of all its parts other than a major component, is not detectable by walk-through metal detectors commonly used at airports or other public buildings;

(B) a major component that, if subjected to inspection by the types of detection devices commonly used at airports or other public buildings for security screening, would not generate an image that accurately depicts the shape of the component; or

(C) a firearm manufactured wholly of plastic, fiberglass, or through a 3D printing process.

* * *

*Major component* means, with respect to a firearm:

(1) the slide or cylinder or the frame or receiver; and

(2) in the case of a rifle or shotgun, the barrel.

*Minor*: An individual younger than 18 years old.

* * *

*Place of public assembly*: A "place of public assembly" is a place where the public may assemble, whether the place is publicly or privately owned, including a [government owned] park [identified by the Maryland-National Capital Park and Planning Commission]; place of worship; [elementary or secondary] school; [public] library; [government-owned or -operated] recreational facility; hospital; community health center; long-term facility; or multipurpose exhibition

facility, such as a fairgrounds or conference center. A place of public assembly includes all property associated with the place, such as a parking lot or grounds of a building.

* * *

**57-7. Access to guns by minors.**

(a) A person must not give, sell, rent, lend, or otherwise transfer any rifle or shotgun or any ammunition or major component for these guns in the County to a minor. This subsection does not apply when the transferor is at least 18 years old and is the parent, guardian, or instructor of the minor, or in connection with a regularly conducted or supervised program of marksmanship or marksmanship training.

(b) An owner, employee, or agent of a gun shop must not allow a minor to, and a minor must not, enter the gun shop unless the minor is accompanied by a parent or other legal guardian at all times when the minor is in the gun shop.

(c) A person must not give, sell, rent, lend, or otherwise transfer to a minor:

(1) a ghost gun or major component of a ghost gun;

(2) an undetectable gun or major component of an undetectable gun; or

(3) a computer code or program to make a gun through a 3D printing process.

(d) A person must not manufacture or assemble a gun, including making a gun through a 3D printing process, in the presence of a minor.

(e) A person must not store or leave a ghost gun, an undetectable gun, or a major component of a ghost gun or an undetectable gun, in a location that the person knows or should know is accessible to a minor.

**[**(c)**]** (f) This section must be construed as broadly as possible within the limits of State law to protect minors.

**57-11. Firearms in or near places of public assembly.**

(a) **[**A**]** In or within 100 yards of a place of public assembly, a person must not:

(1) sell, transfer, manufacture, assemble, possess, or transport a ghost gun, undetectable gun, handgun, rifle, or shotgun, or ammunition or major component for these firearms**[**, in or within 100 yards of a place of public assembly**]**; or

(2) sell, transfer, possess, transport, or use a computer code to create, a firearm through a 3D printing process.

(b) This section does not:

(1) prohibit the teaching of firearms safety or other educational or sporting use in the areas described in subsection (a);

(2) apply to a law enforcement officer, or a security guard licensed to carry the firearm;

(3) apply to the possession of a firearm or ammunition, other than a ghost gun or an undetectable gun, in the person's own home;

(4) apply to the possession of one firearm, and ammunition for the firearm, at a business by either the owner who has a permit to carry the firearm, or one authorized employee of the business who has a permit to carry the firearm;

(5) apply to the possession of a handgun by a person who has received a permit to carry the handgun under State law; or

(6) apply to separate ammunition or an unloaded firearm:

(A) transported in an enclosed case or in a locked firearms rack on a motor vehicle, unless the firearm is a ghost gun or an undetectable gun; or

(B) being surrendered in connection with a gun turn-in or similar program approved by a law enforcement agency.

* * *

**57-15. Penalty.**

Any violation of this Chapter or a condition of an approval certificate issued under this Chapter is a Class A violation to which the maximum penalties for a Class A violation apply. Any violation of Section 57-8 is a Class A civil violation.

**57-16. Reporting requirement.**

(a) The County Police Department must submit a report annually to the County Executive and the County Council regarding the availability and use of ghost guns and undetectable guns in the County.

(b) The report must include the number of ghost guns and undetectable guns recovered by the Department during the prior year.

(c) Each report must be available to the public on the Police Department's website.

# LEGISLATIVE REQUEST REPORT

Bill 4-21
*Weapons – Protection of Minors and Public Places - Restrictions Against Ghost Guns and Undetectable Guns*

**DESCRIPTION:** Bill 4-21 would:

- define terms related to firearm laws;
- restrict the manufacture, possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms with respect to minors;
- restrict the manufacture, possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms within 100 yards of places of public assembly; and
- generally amend the law regarding firearms and other weapons.

**PROBLEM:** accessibility and use of ghost guns, including unfinished frames and receivers, and undetectable guns in the County

**GOALS AND OBJECTIVES:** prohibit the use and sale of ghost guns to the greatest extent possible consistent with state law

**COORDINATION:** MCPD

**FISCAL IMPACT:** OMB

**ECONOMIC IMPACT:** OLO

**RACIAL EQUITY AND SOCIAL JUSTICE IMPACT:** OLO

**EVALUATION:** To be done.

**EXPERIENCE ELSEWHERE:** Rhode Island, Washington State, District of Columbia

**SOURCE OF INFORMATION:** Christine Wellons, Legislative Attorney

**APPLICATION WITHIN MUNICIPALITIES:** N/A

**PENALTIES:** Class A Violation: fines of up to $1,000 and up to 6 months in prison

F:\LAW\BILLS\2104 Ghost Guns\LRR.Docx

# Racial Equity and Social Justice (RESJ) Impact Statement

Office of Legislative Oversight

## BILL 4-21: WEAPONS-PROTECTION OF MINORS AND PUBLIC PLACES-RESTRICTIONS AGAINST GHOST GUNS AND UNDETECTABLE GUNS

### SUMMARY

The Office of Legislative Oversight (OLO) expects Bill 4-21 to favorably impact racial equity and social justice by narrowing public health and safety disparities among County residents by race and ethnicity.

---

### BACKGROUND

On January 19, 2021, the Council introduced Bill 4-21; it aims to reduce crime and violence in the County involving ghost guns and other untraceable firearms, especially involving minors and heavily populated areas. [1]

The phrase "ghost gun" refers to do-it-yourself firearms that are untraceable and/or undetectable.[2] Ghost guns include firearms that:

- Are constructed to avoid detection, lack serial numbers (usually provided by traditional manufacturers);
- Can be built using 3-D printers or similar technology, and/or using kits where 80% of the firearm is preconstructed; and
- Can be fully assembled using readily available tools (instruction can be found online).[3]

What makes ghost guns more dangerous than typical firearms is that they lack serial numbers and a background check requirement for purchase.[4] As such, people who would usually be prohibited from purchasing firearms, like youth and certain convicted felons, can acquire these types of firearms.[5]

Of note, Bill 4-21 responds to the consistently increasing number of undetectable firearms recovered by law enforcement in the Metropolitan Washington region over the past few years. For example:

- In 2020, Washington D.C. police recovered 282 ghost guns compared to three in 2017; nine of these firearms were reportedly involved in homicides.[6]
- In 2020, the Montgomery County Police Department recovered 43 ghost guns in the County; the majority were retrieved from District 3, which serves Silver Spring.[7]

Bill 4-21 aims to reduce firearm violence in the County, focusing on increasing public safety.[8] It seeks to strengthen law regarding firearms and other weapons by broadening key definitions and increasing restrictions related to weapon compliance in the County.[9] If implemented, it would make the following modifications to County law: [10]

- Define terms related to firearm laws;
- Restrict the manufacture, possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms with respect to minors;
- Restrict the manufacture, possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms within 100 yards of places of public assembly; and
- Generally amend the law regarding firearms and other weapons.

## Demographic Data

Understanding the impact of Bill 4-21 on racial equity and social justice in the County requires a review and analysis of local data describing incidents of firearm violations and violence.

As noted in Table 1, a review of the Montgomery County Police Department data finds a 31% increase in firearm recoveries over the past five years.[11] A review of data compiled by Healthy Montgomery, the County's community health improvement initiative, further finds that disparities in firearm hospitalization rates by race and ethnicity.[12] Black residents experienced an age-adjusted firearm hospitalization rate of 8.6 per 100,000 persons from 2016-2018 compared to 2.4 for Latinx residents, 1.2 for White residents, and 0.3 for Asian residents.[13] These findings suggests that the increase in firearm recoveries may disparately impact Black and to a lesser extent Latinx residents.

**Table 1: Montgomery County Firearm Incidents**

| Race and Ethnicity | 2015 | 2016 | 2017 | 2018 | 2019 | Change |
|---|---|---|---|---|---|---|
| Homicides | 30 | 16 | 23 | 20 | 15 | -15 |
| Non-Fatal Shootings | ** | 90 | 79 | 93 | 99 | ** |
| Firearm Recoveries | 767 | 877 | 912 | 941 | 1,047 | +280 |

Sources: Montgomery County Police Department Crime Reports 2015-2019

Disproportionality by race in local firearm hospitalizations is consistent with state and national data describing disproportionality by race in firearm deaths. For example, data compiled by the Center for Disease Control shows that Black residents represented 29% of Maryland's population but represented 57% of the victims killed by firearms in 2018.[14] Nationally, Black people represented 19% of the Country's population but represented 25% (9,959 a total of 39,740 people) of the victims killed by firearms in 2018.[15]

## Anticipated RESJ Impacts

Assuming the number of firearms and firearms recoveries drive firearm injuries, reducing the number of firearms in the County should reduce the number of firearm hospitalizations. Given that Black and Latinx residents face the highest rates of firearm hospitalizations, a decline in available firearms should disproportionately benefit Black and Latinx residents. Consequently, OLO anticipates that Bill 4-21 would favorably impact racial equity and social justice in the County by reducing firearm hospitalizations and potentially narrowing the gap in local firearm hospitalization rates by race and ethnicity.

## Methodologies, Assumptions, and Uncertainties

This RESJ impact statement and OLO's analysis rely on several information sources, including Census data, MCPD Reports, and unpublished ghost gun data, and County Council packets. OLO also reviewed several sources to understand trends and disparities in firearm incidents by race and ethnicity locally and nationally. These include:

- Causes of Injury-Related Death, 2018, Center for Disease Control and Prevention[16]
- Racial Equity Profile, Montgomery County, Office of Legislative Oversight[17]
- Healthy Montgomery Core Measures Data Summary

OLO also visited the websites of Marylanders to Prevent Gun Violence,[18] Everytown Research,[19] and the Educational Fund to Stop Gun Violence[20] for information.

## Recommended Amendments

The County's Racial Equity and Social Justice Act requires OLO to consider whether recommended amendments to bills aimed at narrowing racial and social inequalities are warranted in developing RESJ impact statements.[21] OLO has determined that the key provisions included in Bill 4-21 align with the best practices for reducing disproportionality in firearm injuries. Consequently, this RESJ impact statement does not offer recommendations.

## Caveats

Two caveats to this racial equity and social justice impact statement should be noted. First, predicting the impact of legislation on racial equity and social justice is a challenging, analytical endeavor due to data limitations, uncertainty, and other factors. Second, this RESJ statement is intended to inform the legislative process rather than determine whether the Council should enact legislation. Thus, any conclusion made in this statement does not represent OLO's endorsement of, or objection to, the bill under consideration.

## Contributions

OLO staffer Dr. Theo Holt, RESJ Performance Management and Data Analyst, drafted this RESJ statement with assistance from Dr. Elaine Bonner-Tompkins, OLO Senior Legislative Analyst.

---

[1] Montgomery County Council, Bill 4-21, Weapons-Protection of Minors and Public Places-Restrictions Against Ghost Guns and Undetectable Guns**,** December/January 2020/21, Montgomery County, Maryland.

[2] Ibid.

[3] Ibid.

[4] Katherine E. Beyer, Busting the Ghost Guns: A Technical, Statutory, and Practical Approach to the 3-D Printed Weapon Problem, Volume 103, Issue 3, 2014, Kentucky Law Journal, University of Kentucky. Busting the Ghost Guns: A Technical, Statutory, and Practical Approach to the 3-D Printed Weapon Problem (uky.edu)

[5] Ibid.

[6] Tom Jackman, Attorneys general in D.C., Md. And Va. Support lawsuit demanding AFT regulate 'ghost guns,' December 24, 2020, The Washington post.

[7] Unpublished Ghost Gun Data compiled and shared with OLO on December 11, 2020 by the County Council.

[8] Ibid

[9] Bill 4-21

[10] Ibid

[11] MCPD policy, Planning & Quality Assurance Division, 2019 Annual Report on Crime & Safety, Montgomery County Department of Police, Montgomery County Maryland. 2019 MCPD Annual Report on Crime and Safety FINAL (1).pdf (montgomerycountymd.gov)

Case 8:26-cv-02963-DKC Document 26-5 Filed 08/24/26 Page 20 of 30

---

[12] Healthy Montgomery Core Measures Data Summary https://www.montgomerycountymd.gov/healthymontgomery/Resources/Files/Reports/Healthy Montgomery Core Measures_2010-18.pdf

[13] Ibid

[14] WISQARS, Explore Fatal Injury Data Visualization Tool, Causes of Injury-Related Death, 2018, Center for Disease Control and Prevention. https://wisqars-viz.cdc.gov:8006/explore-data/explore/selected-years?ex=eyJ0YmkiOlsiMCJdLCJpbnRlbnRzIjpbIjAiXSwibWVjaHMiOlsiMjA4OTAiXSwic3RhdGUiOlsiMjQiXSwicmFjZSI6WyIxIiwiMiIsIjMiLCI0Il0sImV0aG5pY3R5IjpbIjEiLCIyIiwiMyJdLCJzZXgiOlsiMSIsIjIiXSwiYWdlR3JvdXBzTWluIjpbIjAwLTA0Il0sImFnZUdyb3Vwc01heCI6WyIxOTkiXSwiY3VzdG9tQWdlc01pbiI6WyIwIl0sImN1c3RvbUFnZXNNYXgiOlsiMTk5Il0sImZyb21ZZWFyIjpbIjIwMTgiXSwidG9ZZWFyIjpbIjIwMTgiXSwieXBsbEFnZXMiOlsiNjUiXSwibWV0cm8iOlsiMSIsIjIiXSwiYWdlYnV0dG4iOiI1WXIiLCJncm91cGJ5MSI6IkFHRUdQIn0%3D

[15]

[16] CDC Firearm Data.

[17] Jupiter Independent Research Group, Racial Equity Profile Montgomery County, July 2019, Office of Legislative Oversight, Montgomery County, Maryland.

[18] Marylanders to Prevent Gun Violence. https://mdpgv.org/

[19] Everytown Research https://everytownresearch.org/

[20] The Educational Fund to Stop Gun Violence https://efsgv.org/state/maryland/

[21] Montgomery County Council, Bill No. 27-19 Racial Equity and Social Justice, Montgomery County, MD.

# Economic Impact Statement

Office of Legislative Oversight

# BILL 4-21 Weapons – Protection of Minors and Public Places – Restrictions Against Ghost Guns and Undetectable Guns

## SUMMARY

The Office of Legislative Oversight (OLO) anticipates that enacting Bill 4-21 would have minimal impacts on economic conditions in the County.

## BACKGROUND

The goal of Bill 4-21, introduced on January 19, 2021, is to prohibit the use and sale of "ghost guns."[1] The bill would define "ghost gun" and "undetectable gun" in County law. According to the bill, it would also make the following changes to the laws regarding firearms and other weapons:

- "restrict the manufacture, possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms with respect to minors;" and
- "restrict the manufacture, possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms within 100 yards of places of public assembly."

Moreover, any violation of these restrictions would be a "Class A violation to which the maximum penalties for a Class A violation apply."

## METHODOLOGIES, ASSUMPTIONS, AND UNCERTAINTIES

OLO does not anticipate that Bill 4-21 would have direct economic impacts on private organizations or residents in the County. However, OLO notes that gun violence has direct and indirect economic costs for victims, perpetrators, and other stakeholders.[2] Any indirect economic impacts from enacting Bill 4-21 would depend primarily on the effectiveness of the restrictions on "ghost" and "undetectable" guns in preventing gun violence in the future. For perspective on the scale of the problem, the Montgomery County Police Department recovered 43 ghost guns in the County in 2020.[3]

---

[1] Montgomery County Council, Bill 4-21, Weapons – Protection of Minors and Public Places – Restrictions Against Ghost Guns and Undetectable Guns, Introduced on January 19, 2021, Montgomery County, Maryland.

[2] Mark Follman, Julia Lurie, Jaeah Lee, and James West, "The True Cost of Gun Violence in America," Mother Jones, April 15, 2015, https://www.motherjones.com/politics/2015/04/true-cost-of-gun-violence-in-america/; Jaeah Lee and Julia Lurie, "The True Cost of Gun Violence: Our Methodology," Mother Jones, May/June 2015, https://www.motherjones.com/politics/2015/04/methodology-gun-violence-data-ted-miller/; and A State-by-State Examination of the Economic Costs of Gun Violence, U.S. Congress Joint Economic Committee, Democratic Staff, September 18, 2019, https://www.jec.senate.gov/public/_cache/files/9872b4d4-4151-4d3e-8df9-bc565743d990/economic-costs-of-gun-violence---jec-report.pdf.

[3] Unpublished Ghost Gun Data compiled and shared with OLO on December 11, 2020 by the County Council.

## VARIABLES

The variables that could affect the economic impacts of enacting Bill 4-21 are the following:

- Effectiveness of "ghost" and "undisclosed" gun restrictions in preventing gun violence; and
- Amount of criminal and civil penalties incurred by residents who violate the restrictions.

## IMPACTS

WORKFORCE ▪ TAXATION POLICY ▪ PROPERTY VALUES ▪ INCOMES ▪ OPERATING COSTS ▪ PRIVATE SECTOR CAPITAL INVESTMENT ▪ ECONOMIC DEVELOPMENT ▪ COMPETITIVENESS

### Businesses, Non-Profits, Other Private Organizations

OLO believes that Bill 4-21 would not have significant economic impacts on private organizations in the County in terms of the Council's priority indicators, namely business income, workforce, operating costs, capital investments, property values, taxation policy, economic development, and competitiveness.[4]

### Residents

OLO believes that Bill 4-21 would not have significant economic impacts on County residents in terms of the Council's priority indicators. However, households with residents who would have otherwise been killed or injured in gun-related incidents without the "ghost" and "undisclosed" gun restrictions would not experience the net loss of income from medical expenses and permanent or temporary absences from work. Moreover, the enforcement of the restrictions would result in income loss for violators. The maximum penalties would be $1,000 and 6 months in jail for criminal violations and $500 for initial offenses and $750 for repeat offenses for civil violations.

## WORKS CITED

A State-by-State Examination of the Economic Costs of Gun Violence. U.S. Congress Joint Economic Committee. Democratic Staff. September 18, 2019. https://www.jec.senate.gov/public/_cache/files/9872b4d4-4151-4d3e-8df9-bc565743d990/economic-costs-of-gun-violence---jec-report.pdf.

Follman, Mark, Julia Lurie, Jaeah Lee, and James West. "The True Cost of Gun Violence in America." *Mother Jones.* April 15, 2015. https://www.motherjones.com/politics/2015/04/true-cost-of-gun-violence-in-america/.

Montgomery County Code. Section 1-19, Fines and Penalties. https://codelibrary.amlegal.com/codes/montgomerycounty/latest/montgomeryco_md/0-0-0-488.

Montgomery County Council. Bill 10-19, Legislative Branch – Economic Impact Statements – Amendments. Enacted on July 30, 2019. Montgomery County, Maryland.

[4] For the Council's priority indicators, see Montgomery County Council, Bill 10-19 Legislative Branch – Economic Impact Statements – Amendments, Enacted on July 30, 2019, Montgomery County, Maryland, 3.

# Economic Impact Statement

## Office of Legislative Oversight

Montgomery County Council. Bill 4-21, Weapons – Protection of Minors and Public Places – Restrictions Against Ghost Guns and Undetectable Guns. Introduced on January 19, 2021. Montgomery County, Maryland.

## CAVEATS

Two caveats to the economic analysis performed here should be noted. First, predicting the economic impacts of legislation is a challenging analytical endeavor due to data limitations, the multitude of causes of economic outcomes, economic shocks, uncertainty, and other factors. Second, the analysis performed here is intended to *inform* the legislative process, not determine whether the Council should enact legislation. Thus, any conclusion made in this statement does not represent OLO's endorsement of, or objection to, the bill under consideration.

## CONTRIBUTIONS

Stephen Roblin (OLO) drafted this economic impact statement.

**Fiscal Impact Statement**
**Bill 4-21, Weapons – Protection of Minors and Public Places - Restrictions Against Ghost Guns and Undetectable Guns**

1. **Legislative Summary**

   Bill 4-21 defines key terms contained in existing firearm laws, and regulates the use, sale, and manufacturing of undetectable weapons with respect to minors and in proximity to public space. Regarding key terms, the Bill defines an undetectable weapon, and expands the definition of public space to include privately owned properties where the public may assemble.

   Bill 4-21 also requires the Montgomery County Police Department (MCPD) to provide annual reports to the public, the County Executive and the County Council detailing the number and availability of undetectable guns in the County.

2. **An estimate of changes in County revenues and expenditures regardless of whether the revenues or expenditures are assumed in the recommended or approved budget. Includes source of information, assumptions, and methodologies used.**

   This bill is not expected to impact County revenues or expenditures.

3. **Revenue and expenditure estimates covering at least the next 6 fiscal years.**

   There is no anticipated change in revenues and expenditures over the next 6 fiscal years.

4. **An actuarial analysis through the entire amortization period for each bill that would affect retiree pension or group insurance costs**.

   Not applicable.

5. **An estimate of expenditures related to County's information technology (IT) systems, including Enterprise Resource Planning (ERP) systems.**

   Not applicable.

6. **Later actions that may affect future revenue and expenditures if the bill authorizes future spending.**

   The Bill does not authorize future spending.

7. **An estimate of the staff time needed to implement the bill.**

   Implementation of the Bill would not have an impact on staff time.

8. **An explanation of how the addition of new staff responsibilities would affect other duties.**

   Not applicable.

9. **An estimate of costs when an additional appropriation is needed.**

   There is no additional appropriation needed to implement this bill.

10. **A description of any variable that could affect revenue and cost estimates.**

    Not applicable.

11. **Ranges of revenue or expenditures that are uncertain or difficult to project.**

    Not applicable.

12. **If a bill is likely to have no fiscal impact, why that is the case.**

    The bill updates key terms of existing firearm laws which would not impact existing service delivery with the Montgomery County Police Department, nor would it impact staffing.

    The reporting requirements of the Bill would be included among the existing reports provided to the public.

13. **Other fiscal impacts or comments.**

    Not applicable.

14. **The following contributed to and concurred with this analysis:**

    Neil Shorb, Department of Police

    Taman Morris, Office of Management and Budget

Jennifer Bryant, Director
Office of Management and Budget

02/09/21
Date

**Testimony on Montgomery County Council Bill 4-21**
**Lead Sponsor: Council Vice President Albornoz**

Lauren Kline
Brady Maryland
5334 Merriam St
Bethesda, MD 20814
lauren@laurenklinehomes.com
(301) 518-9005

As both a longtime resident of Montgomery County (since 1988) who cares deeply about the safety, well-being and quality of life of our community and as the Co-Lead of the Brady Maryland Executive Committee, I am pleased to support this much needed legislation (Council Bill 4-21) to regulate ghost guns and 3-D printed firearms in the County.

Wikipedia defines a ghost gun as "***a term for a (typically) homemade or improvised firearm that lacks commercial serial numbers making these firearms harder to trace***". Ghost guns are also commonly made from parts known as ***"... a"80% receiver," "80% finished," "80% complete," or an "unfinished receiver". These are all terms referring to an item that has not yet reached a stage of manufacture that meets the definition of a firearm as defined by the Gun Control Act of 1968 (GCA***)". (Times Union, 9/13/19).

3-D printed guns are firearms that are mostly produced with a 3-D printer. They can be made of plastic or metal. The plastic ones are usually used as improvised guns that evade regulation.

Brady Maryland supports the 2nd Amendment and the right to possess and legally carry firearms. As with all rights, however, the right to carry firearms is not unlimited. The privilege must be exercised responsibly, legally and with regard to the rights and safety of others.

In general, ghost guns and 3-D printed guns pose a unique danger for the following reasons:

- Ghost guns undermine all gun laws. They are untraceable, unserialized and the parts used to assemble ghost guns are available to purchase and construct without any background check. Why are they treated differently than other guns? Are they any less lethal or dangerous?
- Ghost gun kits and parts do not require background checks. As a result, they can be purchased by those who otherwise would be prohibited from purchasing a gun including domestic abusers, minors, gun traffickers and those who want to do harm to others. Why are ghost guns able to evade existing regulations that were created to provide certain safeguards?
- Ghost gun kits and parts are *intentionally* marketed as unregulated and untraceable to appeal to people who want to avoid background checks.
- Ghost guns are constructed using an unfinished frame or receiver, the piece of the firearm that contains the "operating parts" of the firearms mechanism and the very part that is regulated under federal law.
  -When a frame or receiver is unfinished by a small fraction, it is unregulated under both state and federal law.
  -Ghost guns frequently come in kits that include all the parts necessary to turn the unfinished frame into a fully functioning gun

- 3-D printed guns pose their own separate danger. They are usually created out of polymer plastics which are not picked up by metal detectors.
- Council Bill 4-21 is consistent with the positive steps the Maryland legislature and the Montgomery County Council have already taken to keep our neighborhoods safe from gun violence. Ghost guns and 3-D printed firearms directly undermine the hard work that has already been undertaken at both the state and county level to pass strong but reasonable gun laws that ensure the right to legally possess firearms while also maintaining background checks, tracing ability and other regulations to ensure public safety.

Maryland has already been impacted by ghost guns. The threat will continue to grow as availability to and awareness of these guns increases.

- In December of 2019 a Silver Spring man pled guilty for selling ghost guns to prohibited purchasers.
- In 2019, 117 ghost guns were recovered by Maryland police; in 2020 over 60 guns were recovered in just a 3-month period.
- Between 2016 and 2019, more than 12,000 ghost gun kits were shipped to Maryland with sales increasing by almost a factor of four during these years.

As ghost guns circumvent the regulations that prevent access to guns by minors, Council Bill 4-21 provides important safeguards that help keep firearms out of the hands of underage users. This is not just a theoretical point. In February of 2018, a Montgomery County high schooler brought a homemade handgun to his school. The same 17-year old was also in the process of making an assault style rifle at home.

Bill 4-21 also provides important safeguards by keeping ghost guns away from public spaces including places of worship, schools, libraries, recreational facilities, etc. The public has a right to the same protection from ghost guns as they do from any other regulated firearm.

Thank you to Sponsor Vice President Albornoz and the entire Council for considering this important legislation. Brady Maryland supports taking action to regulate ghost guns and 3-D printed firearms. As a proud Montgomery County resident who chose to settle and raise my 3 daughters here, I also personally applaud taking action to ensure Montgomery County remains safe and a place people where want to live.

Hello Montgomery County Council,

My name is Nathan, and I am a resident of Montgomery County. I grew up on the eastern shore, and then moved into the county about 5 years ago for work. I love this county, most of my family lives here now, and that is why I feel it is imperative to speak out against bill 4-21. I believe this bill will make the county a more dangerous place.

The main issue that I have with this bill is 57-11 "Firearms in or near places of public assembly". This would ban the right of business owners to possess a firearm at their business without a carry permit. As I am sure you know, carry permits are almost impossible to get in MD. This would force business owners to go unprotected at their place of business or would bare minimum make it much more expensive and time consuming to exercise their 2nd amendment right to protect themselves and their assets.

As far as the new regulations for "ghost guns", while I do understand the concern, I am not sure there is a precedent to enact legislation such as this. There have been no major crimes that I am aware of that have been linked to ghost guns. Most crimes that are committed with firearms are done with stolen or illegal guns. Making ghost guns illegal seems like it would be a redundant step to stop crime.

I appreciate your attempts to make this county a safer place, I just believe there are better and more effective ways to go about it, without restricting the second amendment rights of law-abiding citizens.

Thank you for your time!

CIF
Critical Issues Forum
Advocacy for Social Justice

**TESTIMONY OF THE CRITICAL ISSUES FORUM: ADVOCACY FOR SOCIAL JUSTICE OF MONTGOMERY COUNTY, MARYLAND ON FEBRUARY 9, 2021 BEFORE THE MONTGOMERY COUNTY COUNCIL IN SUPPORT OF BILL 4-21**

**Protection of Minors and Public Places - Restrictions Against Ghost Guns and Undetectable Guns**

The Critical Issues Forum: Advocacy for Social Justice (CIF**)** provides this testimony in support of Bill 4-21, which would prohibit:

- transferring a ghost gun or undetectable gun to a minor,
- manufacturing a gun, including through a 3D printing process, in the presence of a minor,
- storing ghost guns, undetectable guns, or gun components in places that the person should know are accessible to minors,
- the sale, transfer, manufacture, or possession of ghost guns or undetectable guns within 100 yards of a place of public assembly, and
- the sale, transfer, possession, or use of a computer code to create a firearm through a 3D printing process within 100 yards of a place of public assembly.

CIF is a coalition of three Montgomery County synagogues - Temple Beth Ami, Kol Shalom, and Adat Shalom - that include over 1,750 households and three denominations of Judaism: Reform, Conservative, and Reconstructionist. CIF advocates in favor of policy proposals that advance our core values, including the sanctity of human life. There can be no question that protecting our children from the danger of untraceable ghost guns can save lives. These weapons circumvent the laws that restrict access to firearms by our children, putting their lives at risk.

Ghost guns are firearms without serial numbers, which are most often assembled from a kit purchased over the internet, without any of the safeguards contained in federal or state law. When used in a crime, they are untraceable. These weapons are favored by individuals who are prohibited from purchasing firearms. As Maryland Attorney General Brian Frosh recently stated in a press release announcing that Maryland had joined 19 other states supporting a lawsuit seeking federal regulation of these firearms: “ghost guns endanger residents of [Maryland] and

impede law enforcement's ability to investigate and prosecute criminal activity."[1]

The risk that access to ghost guns has for our young people is real. A 2017 study found that firearms were the second leading cause of death for children aged 1 to 17, surpassed only by motor vehicle injury deaths.[2] The same study reported that from 2012 to 2014 nearly 1300 children died and 5790 were treated for gunshot wounds each year. According to the authors, 53% of those deaths were homicides, 38% were suicides, and 6% were unintentional. The ability to easily bypass our laws that restrict their purchase of, and access to, firearms by procuring ghost guns through the internet can only increase this toll to us all - adults and children of all ages.

This is a problem that can be solved. The restrictions proposed in Bill 4-21 are a welcome first step. By using the county's discretion to regulate firearms access for children and use in public places, the bill strikes at important dangers posed by ghost guns. Further, action by Montgomery County may encourage our state legislators to enact the ghost gun legislation that has been proposed in the General Assembly this session by Senator Susan Lee and Delegate Leslie Lopez, who have been championing legislation that would close this loophole entirely in our state.

For these reasons, the Critical Issues Forum urges the Council to adopt Bill 4-21

---

[1] AG press release

[2] Fowler KA, Dahlberg LL, Haileuesus T, et al. Childhood Firearm Injuries in the United States. *Pediatrics*. 2017;140(1): e20163486.