# EXHIBIT 12

# Racial Equity and Social Justice (RESJ) Impact Statement

Office of Legislative Oversight

## Expedited Bill 23-26: Weapons - Restrictions on Ghost Guns Near Minors and Carrying of Firearms in or Near Places of Public Assembly

### Summary

Taken together, the Office of Legislative Oversight (OLO) finds the anticipated racial equity and social justice (RESJ) impact of Expedited Bill 23-26 is indeterminate. Most provisions in Bill 23-26 are likely to have a minimal RESJ impact. However, OLO cannot determine the potential impact of removing certain locations as "places of public assembly" (places where firearms are prohibited in or within 100 yards) on racial inequities or disparities in gun violence.

### Purpose of RESJ Impact Statements

RESJ impact statements (RESJIS) evaluate the anticipated impact of legislation on racial equity and social justice in the County. RESJ is a **process** that focuses on centering the needs, leadership, and power of Black, Indigenous, and other People of Color (BIPOC) and communities with low incomes. RESJ is also a **goal** of eliminating racial and social inequities. Applying a RESJ lens is essential to achieve RESJ.[1] This involves seeing, thinking, and working differently to address the racial and social inequities that cause racial and social disparities.[2]

### Purpose of Expedited Bill 23-26

Ghost guns are commonly understood as homemade firearms using 3D printers that lack serial numbers and are therefore untraceable under traditional gun-tracking systems.[3]

In 2021 and 2022, the Council passed Bills 4-21 and 21-22E to regulate ghost guns and other firearms. This included restrictions within 100 yards of public gathering places and rules involving minors. On April 28, 2026, the Maryland Supreme Court ruled in *Engage Armament, LLC v. Montgomery County*. The ruling upheld some parts of these laws while determining that others go beyond the County's authority or are overridden by state law.[4]

The purpose of Expedited Bill 23-26 is to align County law with the Supreme Court's opinion in *Engage Armament.* If enacted, Bill 23-26 would:[5]

- **Clarify the definition of "ghost gun."** The Bill would update the definition to clarify that it does not apply to firearms with a unique serial number by a federally licensed firearms dealer.
- **Update the definition of "place of public assembly."** The Bill would remove the following from the definition of "place of public assembly," where firearms are prohibited in or within 100 yards: hospital, community health center, long-term facility, childcare facility, and a gathering of individuals to collectively express their constitutional right to protest or assemble. The Bill would also clarify that a government building "open to the public for the business of government or community use" is a place of public assembly.
- **Remove provision on ghost guns in the presence of minors.** The Bill would remove the provision that "A person must not purchase, sell, transfer, possess, or transport a ghost gun, including a gun created through a 3D printing process, in the presence of a minor."

- **Add exemption for individuals with wear-and-carry permits traveling through the County.** For the prohibition on firearms in a place of public assembly, the Bill would add an exemption for "the possession of a handgun by a person who has a permit to carry the handgun under State law while the person travels on public highways within 100 yards of a place of public assembly."
- **Remove certain regulations on gun shop operations.** The Bill would remove certain regulations on gun shop operations. These are described in Figure A (Appendix).[6]

The Council introduced Expedited Bill 23-26 on May 12, 2026.

This RESJIS builds on the ones for:

- Bill 4-21, Weapons – Protection of Minors and Public Places - Restrictions Against Ghost Guns and Undetectable Guns, which OLO published in February 2021;[7] and
- Expedited Bill 21-22, Weapons – Firearms In or Near Places of Public Assembly, which OLO published in August 2022.[8]

Please refer to the RESJIS for Expedited Bill 21-22 for background on gun violence and racial equity.

## Anticipated RESJ Impacts

To consider the anticipated impact of Bill 23-26 on RESJ in the County, OLO recommends the consideration of two related questions:

- Who would primarily benefit or be burdened by this bill?
- What racial and social inequities could passage of this bill weaken or strengthen?

Because of racial inequities like segregation and concentrated poverty, Black and Latinx community members are most impacted by gun violence. To understand how Bill 23-26 could impact RESJ, OLO considered how the proposed changes could impact racial inequities and disparities in gun violence. Figure 1 summarizes the main policy changes from Bill 23-26 and their anticipated RESJ impact based on this assessment.

**Figure 1. Policy Changes in Bill 23-26 and Anticipated RESJ Impacts**

| Policy Change | Anticipated RESJ Impact |
|---|---|
| Clarify the definition of "ghost gun." | **Minimal** – This is a technical change that is not likely to meaningfully impact racial inequities or disparities in gun violence. |
| Update the definition of "place of public assembly" to remove several locations where firearms are prohibited in or within 100 yards. | **Indeterminate** – Advocates generally recommend restrictions on guns in public places as a solution to prevent gun violence.[9] This includes in some locations that would be removed through this Bill. However, empirical research is inconclusive on how gun-free zones impact gun violence.[10] |
| Remove provision that prohibits purchasing, selling, transferring, possessing, or transporting ghost guns in the presence of minors. | **Minimal** – OLO could not find information from advocacy or research that suggests this change would meaningfully impact racial inequities or disparities in gun violence. |

| | |
|---|---|
| Add exemption for individuals with wear-and-carry permits travelling through the County. | **Minimal** – OLO could not find information from advocacy or research that suggests this change would meaningfully impact racial inequities or disparities in gun violence. |
| Remove certain regulations on gun shop owners. | **Minimal** – According to publicly available information, only a few gun shops in the County appear to meet the requirements for this provision. Therefore, its removal would practically have a minimal impact.[11] |

Taken together, OLO finds the anticipated RESJ impact of Bill 23-26 is indeterminate. Most of the provisions in the Bill are likely to have a minimal RESJ impact. However, OLO cannot determine the potential impact of removing certain locations as "places of public assembly" (places where firearms are prohibited in or within 100 yards) on racial inequities or disparities in gun violence.

## RECOMMENDED AMENDMENTS

The County's RESJ Act requires OLO to consider whether to recommend amendments to bills that could reduce racial and social inequities and advance RESJ.[12] OLO finds the anticipated RESJ impact of Expedited Bill 23-26 is indeterminate. As such, OLO does not offer recommended amendments. However, should the Council seek to improve the RESJ impact of this Bill, OLO offers two policy options for Council consideration:

- **Increase investment in community-based violence intervention programs.** Because of racial inequities like segregation and concentrated poverty, Black and Latinx community members are disproportionately impacted by gun violence.[13] Researchers and advocates highlight community-based violence interruption programs as effective interventions to reduce gun violence in BIPOC communities.[14]
- **Increase investment in efforts to address intimate partner violence against Black women.** The interaction of racial inequities like segregation and concentrated poverty with gender-based inequities puts Black women in particular at a disproportionate risk of gun violence.[15] Specifically, researchers and advocates note that intimate partner violence (IPV) is a significant driver of violence against Black women.[16] Researchers and advocates highlight increasing funding for culturally-competent, IPV service and prevention programs that primarily serve Black communities and supporting efforts that center Black-women survivors in program, policy and funding decisions as promising practices to prevent IPV against Black women.[17]

## CAVEATS

Two caveats to this RESJIS should be noted. First, predicting the impact of bills on RESJ is challenging due to data limitations, uncertainty, and other factors. Second, this RESJIS is intended to inform the Council's decision-making process rather than determine it. Thus, any conclusion made in this statement does not represent OLO's endorsement of, or objection to, the bill under consideration.

## APPENDIX

**Figure A. Removal of Regulations on Gun Shop Operations in Bill 23-26**

*If enacted, Bill 23-26 would remove the following regulations on gun shop operations from County law:*[18]

Notwithstanding subsection (a), a gun shop owned and operated by a firearms dealer licensed under Maryland or federal law on January 1, 1997, may conduct regular, continuous operations after that date in the same permanent location under the same ownership if the gun shop:

(1) does not expand its inventory (the number of guns or rounds of ammunition displayed or stored at the gun shop at one time) or square footage by more than 10 percent, or expand the type of guns (handgun, rifle, or shotgun) or ammunition offered for sale since January 1, 1997;

(2) has secure locks on all doors and windows;

(3) physically secures all ammunition and each firearm in the gun shop (such as in a locked box or case, in a locked rack, or with a trigger lock);

(4) has adequate security lighting;

(5) has a functioning alarm system connected to a central station that notifies the police; and

(6) has liability insurance coverage of at least $1,000,000.

---

[1] Definition of racial equity and social justice adopted from M. Gamblin et al., "Applying Racial Equity to U.S. Federal Nutrition Programs," Bread for the World and Racial Equity Tools.
[2] Ibid.
[3] R. Torchinsky, "The Biden administration is regulating 'ghost guns.' Here's what the rule does," NPR, April 12, 2022.
[4] Introduction Staff Report for Expedited Bill 23-26, Montgomery County Council, Introduced May 12, 2026, pg. 1.
[5] Ibid. pgs. 2-4.
[6] Expedited Bill 21-23, Introduction Staff Report for Expedited Bill 23-26, pgs. (5)-(6). This provision was not addressed in the recent ruling by the Maryland Supreme Court. However, it was previously blocked by a Circuit Court decision. OLO communication with Council staff on May 22, 2026.
[7] RESJIS for Bill 4-21, Office of Legislative Oversight, February 8, 2021.
[8] RESJIS for Expedited Bill 21-22, Office of Legislative Oversight, August 5, 2022.
[9] "Prohibit Guns in Sensitive Areas," Everytown for Gun Safety; "Guns in Public Spaces," Brady; "Location Restrictions," Giffords Law Center to Prevent Gun Violence.
[10] "Effects of Gun-Free Zones on Violent Crime," Gun Policy in America, RAND, updated January 29, 2026.
[11] OLO communication with Office of County Attorney staff on June 4, 2026.
[12] Bill 27-19, Administration – Human Rights – Office of Racial Equity and Social Justice – Racial Equity and Social Justice Advisory Committee – Established, Montgomery County Council.
[13] RESJIS for Expedited Bill 21-22.
[14] S.D. Randolph, et al., "Addressing Systemic Racism and Racialized Violence to Reduce Firearm Injury and Mortality Inequities," JAMA Health Forum, April 4, 2024; "Community Gun Violence," Center for Gun Violence Solutions, John Hopkins Bloomberg School of Public Health; "Impact of Gun Violence on Historically Marginalized Communities," Everytown Research & Policy.
[15] "Black Women in the U.S. Murdered Six Times More Often Than White Women," Columbia University Mailman School of Public Health, February 8, 2024.

[16] S. Gedeon, "Black Femicide: A Silent Public Health Crisis," Connecticut Children's, March 14, 2023.
[17] "Elevating Solutions and Impacts in the Black Community," Let's End DV, Blue Shield of California Foundation; B. Waller, et al., "Caught in the Crossroad: An Intersectional Examination of African American Women Intimate Partner Violence Survivors' Help Seeking," Trauma Violence Abuse, February 18, 2021.
[18] Expedited Bill 21-23, Introduction Staff Report for Expedited Bill 23-26, pgs. (5)-(6).